UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHATEAU EXPRESS, LLC,<br><br>Plaintiff,<br><br>-v-<br><br>FOND DU LAC COLD STORAGE L.L.C.,<br><br>Defendant. | Civil Action No.<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL** |

Plaintiff Chateau Express, LLC ("Chateau Express"), by and through its undersigned counsel, Thompson Coburn LLP, for its Complaint against Defendant Fond du Lac Cold Storage L.L.C. ("Fond du Lac"), hereby asserts and alleges as follows:

### INTRODUCTION

1. This action arises out of Fond du Lac's admitted breach of its obligations under a March 24, 2023 Asset Purchase Agreement (the "Asset Purchase Agreement"), as amended by an April 29, 2025 Amendment to Asset Purchase Agreement (the "Amendment," and collectively with the Asset Purchase Agreement, the "Agreement"). Under the Asset Purchase Agreement, Fond du Lac agreed to purchase Chateau Express's customer contracts and other assets for $4,480,135.22 (the "Purchase Price").

2. The Asset Purchase Agreement required Fond du Lac to pay the Purchase Price after closing in eight quarterly installments (the "Quarterly Payments") beginning with the quarter that ended on June 30, 2023. In addition, Fond du Lac was obligated to make a final "Lump Sum Payment" on July 30, 2025.

3. After missing multiple payment deadlines in 2024, Fond du Lac advised it could not make the payments due to cash flow issues and market conditions and requested an extension

for payments due in 2025. On or about April 29, 2025, the parties entered into the Amendment providing, among other things, extensions of the deadlines for the final Quarterly Payments and the Lump Sum Payment.

4. Despite the extensions, Fond du Lac failed to timely make the Quarterly Payment due on July 31, 2025, which Fond du Lac estimated to be $545,372. Fond du Lac's failure to timely pay the July 31, 2025 Quarterly Payment constitutes a material breach of the Agreement.

5. In addition, Fond du Lac has made clear, through words and conduct, that it will not comply with its obligation to pay the $423,234 Lump Sum Payment, currently due on October 31, 2025. As a result of Fond du Lac's repudiation and anticipatory breach of the Agreement, Chateau Express has suffered damages of at least $423,234.

6. Fond du Lac's breach and anticipatory breach of the Agreement have caused Chateau Express damages of at least $968,606, plus a contractually agreed late fee, and costs and expenses including reasonable attorneys' fees.

## PARTIES, JURISDICTION, AND VENUE

7. Plaintiff Chateau Express, LLC is a limited liability company organized under the laws of Connecticut. Chateau Express, LLC has two members, both of whom are citizens of Connecticut.

8. Defendant Fond du Lac Cold Storage L.L.C. is a limited liability company organized under the laws of New Jersey, with its principal place of business in Edison, N.J. Upon information and belief, none of the members of Defendant Fond du Lac Cold Storage L.L.C. are citizens of Connecticut and there is complete diversity between the parties to this action.

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties' citizenship is diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.      This Court has personal jurisdiction over Fond du Lac because it is a New Jersey entity with its principal place of business is in this District. In addition, Fond du Lac is bound by the jurisdiction provisions in Section 7.10 of the Asset Purchase Agreement, under which Fond du Lac agreed to submit to the exclusive jurisdiction of this Court.

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant Fond du Lac is subject to personal jurisdiction in this District and because the events and/or omissions giving rise to the claims herein occurred in this District. In addition, Fond du Lac is bound by the venue provisions in Section 7.10 of the Asset Purchase Agreement under which Fond du Lac agreed the sole venue for actions related to the Agreement would be the "state or federal courts located in Newark, New Jersey."

## RELEVANT FACTS

*The Parties and the Agreement*

12.      Plaintiff Chateau Express was in the business of providing temperature-controlled storage, transport, and delivery services for wine and spirits.

13.      Defendant Fond du Lac, likewise, is engaged in the business of warehousing and transporting temperature-sensitive products like wine and cheese.

14.      On or about March 24, 2023, Chateau Express and Fond du Lac entered into the Asset Purchase Agreement for the sale of certain of Chateau Express's assets to Fond du Lac.

15.      The Asset Purchase Agreement provided for the sale of specified assets including Chateau Express's customer contracts with existing customers (the "Legacy Chateau Customers"),

intellectual property, books and records, and goodwill associated with Chateau Express's business (the "Specified Assets"), but excluded other assets like equipment, inventory, accounts receivable, real estate, and other non-customer-related assets.

16. Under Section 1.04 of the Asset Purchase Agreement, Fond du Lac agreed to pay a Purchase Price of $4,480,135.22 for the Specified Assets, subject to upwards or downwards adjustments based on revenues collected by Fond du Lac from Legacy Chateau Customers or new customers introduced by Chateau Express to Fond du Lac after closing (the "New Customers").

17. Fond du Lac was required to pay the Purchase Price in eight Quarterly Payments due within 30 days after end of each of its fiscal quarters, beginning with the quarter ending on June 30, 2023. Each Quarterly Payment was equal to "50% of the revenue invoiced and collected in the corresponding quarter from the Legacy Chateau Customers and any New Customers." (Asset Purchase Agreement, Sec. 1.06(b)).

18. Thus, Fond du Lac was required to make eight Quarterly Payments on: July 30, 2023; October 30, 2023; January 30, 2024; April 30, 2024; July 30, 2024; October 30, 2024; January 30, 2025; and April 30, 2025.

19. In addition, Fond du Lac was required to pay a Lump Sum Payment of $1,500,000 on or before July 30, 2025. Provided, however, that the sum of all Quarterly Payments and the Lump Sum Payment would never exceed the Purchase Price, and no Lump Sum Payment would be made if the entire Purchase Price was paid by the Quarterly Payments.

20. Chateau Express fully performed all its obligations under the Asset Purchase Agreement, including by causing the inventory of all Legacy Chateau Customers to be transferred to Fond du Lac's warehouse and by providing all books and records as required by the Agreement.

21. On January 30, 2025, Fond du Lac failed to timely pay the Quarterly Payment due for the last quarter of 2024. Fond du Lac provided a quarterly report for this quarter admitting it "invoiced and collected" significant revenue from Legacy Chateau Customers and New Customers. Despite admittedly collecting these revenues, Fond du Lac inexplicably failed to remit payment to Chateau Express on time.

22. On March 13, 2025, Chateau Express sent a written demand to Fond du Lac, notifying it that it was in default of its payment obligations and demanding immediate payment. Fond du Lac then requested, and the parties negotiated, three-month extensions of the deadlines for the Quarterly Payments due on January 30, 2025 and April 30, 2025, and for the Lump Sum Payment due on July 30, 2025.

23. On or about April 29, 2025, the parties executed the Amendment to Asset Purchase Agreement, which extended the deadlines for the three outstanding payments of the Purchase Price. Pursuant to the Amendment:

   a. Fond du Lac agreed to pay the outstanding $349,562 of the Q4 2024 Quarterly Payment (previously due on January 30, 2025) on or before April 30, 2025.

   b. Fond du Lac agreed to pay the Q1 2025 Quarterly Payment (previously due on April 30, 2025) on or before July 31, 2025. Fond du Lac estimated this Quarterly Payment would be $545,372.

   c. Fond du Lac agreed to pay the Lump Sum Payment (previously due on July 30, 2025) on or before October 31, 2025. Fond du Lac estimated the Lump Sum Payment will be $423,234.

24. In addition, Fond du Lac agreed to pay late fees if it failed to meet the deadlines provided in the Amendment. Thus, if it missed a payment, Fond du Lac agreed to pay an additional

late fee equal to interest on the missed payment at a rate of 12% per annum, accruing from the original payment deadline under the Asset Purchase Agreement through the payment date. (Amendment, Secs. 1(a), 2(a), 3(a)). Each late fee would be in addition to the Quarterly Payments and Lump Sum Payment, and in addition to the Purchase Price.

25. For example, if Fond du Lac failed to make the Q1 2025 Quarterly Payment by July 31, 2025, it would pay a late fee equal to interest accrued on that Quarterly Payment from the original deadline of April 30, 2025 through the date the Quarterly Payment was made.

26. The Amendment expressly provides that the imposition of late fees is not an excuse for payment delays, shall not limit any of Chateau Express's rights and remedies, and that any failure by Fond du Lac to remit the Quarterly Payments or Lump Sum Payment by the deadlines set forth in the Amendment would "constitute an immediate material default by [Fond du Lac] pursuant to Section 6.02(b) of the [Asset Purchase Agreement]." (Amendment, Secs. 5-6).

27. Further, Fond du Lac agreed that "time is strictly of the essence as against [Fond du Lac's] obligation to pay the Quarterly Payments and the Lump Sum Payment by the deadlines set forth in this Amendment." (Amendment, Sec. 5).

28. Under Section 6.02(b) of the Asset Purchase Agreement, Fond du Lac agreed to "defend, indemnify and hold harmless the Seller Parties [*i.e.*, Chateau Express and its equityholders] … from and against any and all Losses that constitute, or arise out of or in connection with: … (b) any default by [Fond du Lac] in the performance or observance of any of its covenants or agreements hereunder or under any other Transaction Document."

29. As defined in Section 6.01 of the Asset Purchase Agreement, "Losses" includes "all of Chateau Express's "costs and expenses (including without limitation reasonable attorneys' fees and court costs)."

*Fond du Lac's Breach and Anticipatory Breach of the Agreement*

30. Fond du Lac materially breached the Agreement by failing to timely make the Q1 2025 Quarterly Payment due on July 31, 2025, which Fond du Lac estimated to be $545,372.

31. Accordingly, Fond du Lac is liable to Chateau Express for the outstanding Quarterly Payment.

32. Fond du Lac is also liable to Chateau Express for the late fee equal to 12% interest accrued on the Q1 2025 Quarterly Payment from April 30, 2025 through the date of payment.

33. On August 5, 2025, Chateau Express transmitted a demand to Fond du Lac's counsel requesting immediate payment of the outstanding amount. On August 8, 2025, Fond du Lac, through counsel, informed Chateau Express that it would be unable to make the payment until a future date "still to be determined."

34. Given Fond du Lac's breach and its repeated statements that it was experiencing cash flow issues and that market conditions rendered it unable to pay the amounts due under the Agreement, Chateau Express reasonably believed that Fond du Lac would be unable or unwilling to pay the October 31, 2025 Lump Sum Payment.

35. On September 16, 2025, Chateau Express sent another written demand for immediate payment to Fond du Lac. In addition, Chateau Express requested that Fond du Lac provide, in writing, reasonable assurances that Fond du Lac will timely pay the Lump Sum Payment due on October 31, 2025.

36. On September 18, 2025, Fond du Lac's representatives requested a meeting to discuss Chateau Express's demand. Fond du Lac thereafter indicated, through words and conduct, definitively and clearly, that it cannot meet the October 31, 2025 deadline to pay the Lump Sum Payment.

37. To date, Fond du Lac has not provided the requested written assurance that it will comply with its obligations under the Agreement and pay the Lump Sum Payment by October 31, 2025.

38. Accordingly, Fond du Lac has materially repudiated the Agreement. As a result of Fond du Lac's anticipatory breach of the agreement, Chateau Express has sustained and will sustain damages of at least $423,234.

39. As a result of Fond du Lac's breach and anticipatory breach of the Agreement, Fond du Lac is also liable to Chateau Express for Losses (as defined in the Agreement) caused by Fond du Lac's breaches, including without limitation reasonable attorneys' fees and court costs.

## FIRST COUNT
### *Breach of Contract*

40. Chateau Express repeats and realleges the preceding paragraphs as though fully set forth herein.

41. The Asset Purchase Agreement, as amended by the Amendment, is a valid and enforceable contract between Chateau Express and Fond du Lac.

42. Chateau Express gave fair and valuable consideration to Fond du Lac pursuant to Fond du Lac's agreement to purchase the Specified Assets in exchange for the Purchase Price.

43. Chateau Express has fully performed its obligations under the Agreement.

44. Fond du Lac materially breached the Agreement by failing to make the Q1 2025 Quarterly Payment due on July 31, 2025.

45. Fond du Lac's breach has caused damages to Chateau Express in an amount to be determined at trial, but not less than $545,372 plus the contractually agreed late fee equal to interest accrued on the outstanding payment from April 30, 2025 through the date of payment at a rate of

12%, together with interest, attorneys' fees, costs, and such other relief as the Court may deem just and proper.

46. In addition, Chateau Express is entitled to recover all reasonably foreseeable and consequential damages caused by Fond du Lac's ongoing breach of the Agreement.

47. By reason of the foregoing, Chateau Express is entitled to payment from Fond du Lac in an amount not less than $545,372 plus the late fee, not including pre-judgment interest, attorneys' fees, costs, and other disbursements.

## SECOND COUNT
*Anticipatory Breach of Contract*

48. Chateau Express repeats and realleges the preceding paragraphs as though fully set forth herein.

49. The Asset Purchase Agreement, as amended by the Amendment, is a valid and enforceable contract between Chateau Express and Fond du Lac.

50. Chateau Express gave fair and valuable consideration to Fond du Lac pursuant to Fond du Lac's agreement to purchase the Specified Assets in exchange for the Purchase Price.

51. Chateau Express has fully performed its obligations under the Agreement.

52. The Asset Purchase Agreement, as amended by the Amendment, requires Fond du Lac to pay the Lump Sum Payment to Chateau Express on or before October 31, 2025. The timely payment of the Lump Sum Payment is a material term of the Agreement, which includes a "time is of the essence" clause.

53. As more fully set forth above, Chateau Express reasonably believed that Fond du Lac would be unable to pay the Lump Sum Payment based on Fond du Lac's failure to pay the July 31, 2025 Quarterly Payment and its repeated assertions that market conditions and cash flow issues rendered it unable to timely meet its obligations.

54. On September 16, 2025, Chateau Express demanded written assurances from Fond du Lac that Fond du Lac would perform in accordance with the Agreement and timely pay the Lump Sum Payment due on October 31, 2025.

55. To date, Fond du Lac has failed to provide the requested written assurance that it will perform in accordance with the Agreement.

56. Further, as more fully set forth above, Fond du Lac and its representatives, through their conduct and/or statements, have made a definite and unconditional declaration that Fond du Lac will be unable to pay the Lump Sum Payment on time.

57. Fond du Lac's repudiation was material and constitutes an anticipatory breach of the Agreement.

58. At the time of the repudiation and breach, Chateau Express had fully performed all its obligations under the Agreement.

59. As a result of Fond du Lac's conduct, Chateau Express has sustained and will sustain damages of at least $423,234, plus the late fee, not including pre-judgment interest, attorneys' fees, costs, and other disbursements.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Chateau Express, LLC respectfully requests that this Court enter judgment in its favor and against Defendant Fond du Lac Cold Storage L.L.C. as follows:

a. Awarding Chateau Express compensatory damages for the Q1 2025 Quarterly Payment in an amount to be proven at trial but not less than $545,372;

b. Awarding Chateau Express compensatory damages for the contractually agreed late fee equal to interest on the outstanding Q1 2025 Quarterly Payment at a rate of 12% per annum from April 30, 2025 through the date payment is made;

c. Awarding Chateau Express compensatory damages for Fond du Lac's anticipatory breach of the Agreement in an amount to be proven at trial but not less than the Lump Sum Payment of $423,234;

d. Awarding Chateau Express compensatory damages for the contractually agreed late fee equal to interest on the Lump Sum Payment at a rate of 12% per annum from July 30, 2025 through the date payment is made;

e. Awarding Chateau Express all other direct, compensatory, reasonably foreseeable, and consequential damages caused by Fond du Lac's breaches;

f. Awarding Chateau Express pre-judgment and post-judgment interest;

g. Awarding Chateau Express all legal fees and costs, including reasonable attorneys' fees; and

h. Awarding to Chateau Express such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 24, 2025

**THOMPSON COBURN LLP**

By: */s/ Jose A. Fernandez*
Jose A. Fernandez (135982014)

488 Madison Avenue
New York, New York 10022
Telephone: 212.478.7200
Fax: 212.478.7400
E-Mail: jfernandez@thompsoncoburn.com

*Attorneys for Plaintiff*
*Chateau Express, LLC*